I cannot remember a time when I convened with my colleagues before a hearing. We did that on this case. We did that for one purpose, and that is that we wish to be all in agreement as we advised you that the only thing we think is before us is the preliminary injunction. We will expect you to confine your remarks to that issue today. With those preparatory remarks, Ms. Ben-Ami. That doesn't, of course, preclude consideration of your motions with regard to the preliminary injunction. Do you understand that? I do not understand that, Your Honor. I took the comment to mean that the motions were in effect for the moment. No, that is not the case. No, that's not the case, then. And I appreciate the clarification. I thought so. So let me address that right up front. I think we're in an unusual posture where both sides feel that the Court ultimately is going to have to decide. Ultimately, it's not before us, is it? Ultimately, yes. Ultimately, it's not before us. It is not before us at this point. Then why are you asking us to, what are you asking us to do? We're asking the Court to consolidate appeals and to consider everything together. Well, we haven't got anything except a preliminary injunction. We have filed a notice of appeal on the final judgment. That's not even here at the Court yet. It has not gotten written up. There's no briefing yet. It's not even before us. So how can it be before this Court? It's nowhere in the Court of Appeals. That's correct. So you're jumping the gun. We have nothing to consolidate. That was the point of the presiding judge's opening comment, that there's no other appeal before us other than the preliminary appeal or the preliminary injunction and all of the trappings that go with it. We are not here to hear an appeal that has yet to be appealed. Well, the motions are still open. We filed different motions. We did file motions. Consolidation and opposition and otherwise. That's correct. And we did that for a particular reason, the reason being that Judge Young, in his final decision, requested it, in effect, saying that that would be the best posture for this Court to consider things. That's a leap of faith that that's a final judgment, though. It is, in our view and based on Judge Young's view, a final judgment because he has said, I'm done. Well, he can also say he's out to lunch, but that's besides the point. The question here is, we can't find, I've looked through the record with great care, I do not find a document called judgment which is required by the rules. I see a 160-page opinion, but I don't see a judgment. Am I missing that document? Could you forward it up here if you have it? There is no such document. You have what we have. So there's no such judgment. There is a decision, and the judge has characterized it as a final judgment in his writings. The rules require a judgment document. And it also requires a final judgment before it can be appealed. I understand that, and Judge Young has characterized it that way. And there's a lot of language in what Judge Young has said recently about deferring to this panel and the preliminary injunction that leaves a question mark over the whole proceeding, doesn't it, down below? I would agree with Your Honor that this is an unusual circumstance. Oh, all right. And I apologize for my making, but I am here today not alone. Which is why the one thing we agree on is that the only thing that is clearly before us is your preliminary injunction. And with that... And what would you like us to do with it at this point? Would I... In light of... I suppose we could take judicial notice of the existence of a 160-page opinion by the trial judge without necessarily taking judicial notice of its contents, although we may be aware of its contents. And certainly we can't take judicial notice of a judgment that doesn't exist. Given all of that, what is it you would like us to do with this case at this point, making it clear we have nothing to consolidate? What I would like you to do with this case at this moment, Your Honor, is to find that there's double patenting. That's what we're here to do. Where is your final judgment? You don't have a final judgment? But what we do have here is a preliminary injunction. We have a preliminary injunction. And we have a complete record. And there have been cases... On the preliminary injunction. A complete trial record. For the preliminary injunction? No, Your Honor. There was a trial. After the trial... A jury trial. A jury and bench... And a bench trial. There were several trials. And then thereafter the judge issued the preliminary injunction. So the preliminary injunction record includes the entire trial record. There's no more trials to be had here, at least unless this Court... It includes the trial record, but it does not include the trial judge's findings of fact and conclusions of law, which he now has enunciated in 160 pages. But in the preliminary injunction, he managed to do it in three. What are we to do with a record that is that incomplete? What Your Honors are to do, in my opinion, is to vacate the preliminary injunction based on the double patenting issues and the other issues that we raised in our brief to require Judge Young to enter final judgment and to move this case back up if that's what has to happen. But I would like to explain... But you're asking us to vacate it on the basis of likelihood of success on the double patenting. But now you also have a determination. This is a rather strange procedural aspect because the PI was issued after trial and after a determination by the judge. Not complete. Not complete. But how do you get to the point of likelihood of success on that basis? Because now you have to look at the merits. Now you actually have to look at the double patenting. But don't we have to look at the permanent injunction instead of the PI at this point? If the only thing we're up here in front of right now is the preliminary injunction, then you have to look at the preliminary injunction. And if you look at the issues that we raised on preliminary injunction, here were issues of law for which there is no deference. And therefore the only record you have, if we go through this... Are you trying to just save the money of the appeal? Is that it? We give you some judgment on this preliminary injunction and do you promise us you'll take what we say and settle? That's not for us. It's really a very serious issue. We have a whole different medicine that is not being given to patients right now. And we're in a situation that with the legal wrangling, and I recognize that jurisdiction is not something we can just say who cares, but we're in a situation where we could be in this never-never land for another year, a year and a half, and we can't put patients on drug. And this isn't about ball bearings or widgets or whatever. This is about the FDA said this is a new and different drug with a different label. So we are here saying we need resolution. We need resolution. Have you completed your FDA efficacy requirements? Roche was approved after the jury trial. And the posture of this case was that Judge Yo tried this case before there was FDA approval. At the time of the trial there was European approval. We were not allowed to show the jury that label. The jury never heard what the FDA found, that it was a new chemical entity, that it had a different label. Well, that isn't the question the jury was asked to decide. They were deciding something called patent infringement. It's a little different than... But it could be evidence of... We'll leave that to another day. Again, that's not really before us. It is what it is. But the reality is you asked why we're making the request to the court to consolidate, why we're in this position. We need to get a final decision. It's not because we don't want to spend the money, obviously. It's because we need to get to a final decision. What can we do to expedite getting you a final decision rather than a preliminary decision? What would you like us to do? I think what the court can do is to vacate the preliminary injunction and order Judge Young to issue the final judgment. On what grounds would we vacate the preliminary injunction? On the likelihood of success. On the likelihood of success. Despite the fact that there is a jury verdict against you and despite the fact that at least if we take judicial notice of the trial judge's 160-page opinion, he seems to think otherwise. It's not likely at all anymore. What is the meaning of the likelihood test? These are legal issues, and that's the difference. And we were very careful in raising our issues on preliminary injunction to be legal issues, not factual issues. So there is no difference. This court has to decide if Section 121 applies to continuations. That's a legal issue. Judge Young doesn't even address it. He just says they're divisions. That's an issue for this court to decide. This court needs to decide what the language of the statute means. That's a court for this court to decide. There is no deference to Judge Young on that. This court needs to decide the claim construction that was led to the jury charge. That is not an issue. And we should do all of this without the views of the trial judge? On the claim construction, Your Honor, has the views of the trial judge. But where in his opinion does he set that out? No, Your Honor, it's part of the preliminary injunction record because the morphine was part of the preliminary injunction record, and the jury charge was part of the preliminary injunction record because it was a full trial. So you do have it. If we want to patch it together, that's fine. It's all put in our brief. But the reality is what we're asking the court, and I grant you this is unusual in terms of posture because normally on a preliminary injunction you didn't have a full trial, and normally you don't get a final decision five days before your appeal argument. But what we're asking the court is to push this case towards resolution. And what we're concerned about is... Can we give you an abbreviated trial, an abbreviated schedule for briefing? We would expedite, absolutely. Will you do that on your own? Yes, we will. We will ask for a motion. We're going to make a motion to expedite, but we will do that. We did that in the first instance. Let's hear from Mr. Day.  Let's hear from Mr. Day. Thank you, Your Honor. Rusty Day representing Amgen. I believe you asked Ms. Benami what should the court do. Speak up, please. I believe you asked Ms. Benami what should the court do. That was my first question. And I have an answer for this. You affirm the preliminary injunction. If you're not inclined to do that, you should dismiss this appeal and remand so the court can enter final judgment on the permanent injunction. We have a complete record. Either way gets us to a final judgment, and either way gets a complete record in front of this court. And as I pointed out in the motion that I filed, consolidation of an appeal from this order, but not from a final judgment, will not get to a final resolution of this case because it excludes Amgen's rights of appeal, which are not yet perfected because no final judgment has been entered. But we have nothing to consolidate. There's nothing to consolidate. It's not a final judgment. That's my point. And that's why I think the court has two choices. First, affirm the preliminary injunction. But it's kind of clear that Judge Young is waiting to see what happens today before he does anything else, right? That seems to be what you find in his opinion. He's very deferential. Very deferential. He says that he could enter the permanent injunction and deprive this court of jurisdiction, and then he says this the court may not do. Well, he wouldn't be able to deprive us of the jurisdiction over the P.I. because he's lost jurisdiction over the P.I. Exactly. And so what he is waiting for this court to do is to act, either to affirm the preliminary injunction or to remand the matter because this appeal is now moved. I submit because the court has indicated that it's prepared to supersede it with a permanent injunction. He's made his decision on that. Well, how can it be moved if we don't have a final judgment by the trial judge? What moves it? What would move it is entry of the permanent injunction. But we don't have a permanent injunction. I understand that. Okay. What moves this current appeal? Nothing on this record. There's nothing to move it, is there? Nothing on this record, although I think that I've heard I would agree with Judge Rader. Nothing on this record moves it. So there's no moving involved. Then what? Well, as I tried to indicate, then I think you affirm the injunction. We have to make a decision on the P.I. in order to complete the record and send that decision back to the trial court so that the trial court can then enter a final judgment one way or the other. That is certainly one way to proceed. If it's the only way to proceed, I suggest an alternative way in the motion, and if the court rejects that way. Which was your alternative? Your alternative was to dismiss. Dismiss the appeal. On what grounds would we dismiss? I believe you can dismiss this. I believe you can dismiss this appeal as moved. Because there's nothing on the record that supports that. Well, the record, there's nothing on the record in front of this court because the lower court's decision is not yet before this court. The clearest thing to do in a way would be to dismiss, but I'm hard-pressed to find some grounds for it. Assuming we were to affirm, and this is hypothetical, assuming we were to affirm without going into all of the deep issues that there are in order to leave this for a merits panel at some time when we actually have a final judgment in the case, what implications would be drawn by your side with regard to an affirmance? That is, what arguments would we hear next time you're up here telling us that we'd already decided something in the earlier preliminary injunction process? You haven't. This court's jurisdiction over a preliminary injunction is to determine whether the district court abused its discretion. Abused its discretion with respect to what? A balancing of four factors, likelihood of success on appeal, irreparable harm, balance of hardships, public interest. And that would be all that we would be deciding were we to affirm. That's correct. And what the district court held in the record before this court on the February 29th order of the district court. You said all four were met. The district court said, Amgen's success at trial establishes its likelihood of success. Sufficient to warrant the entry of a preliminary injunction to preserve the status quo while I write my decision of the final post-trial motions. And I assume he sent it up here. This court affirmed that decision, that it is not an abuse of discretion by the district court after a trial on the merits, particularly before a jury, to award a preliminary injunction to preserve the status quo while it writes up its decision of the final post-trial motions. That's all this court needs to decide. And this court is done. The appeal, the preliminary injunction is affirmed. The matter is back before Judge Young to assemble a final record so there can be a full merits appeal. Would you object to an expedited briefing period? On an expedited? It depends upon what issues. The court does not yet have the notice of appeal that Roche, I believe they set up 26 different issues they want to appeal. As the court understands, this is a very, very complex record. Should we assume there would be a cross-appeal? Yes, there would. Which we don't yet have. Which you don't yet have. So there's nothing to expedite. Okay. Has a notice of appeal been filed with the court and the district court? Pardon? The notice of appeal has it been filed with the district court? They filed their notice of appeal from the district court's October 2nd order. I believe they filed that on Friday or Monday. I'm not sure which day. And we don't need to address the question of whether that's a valid notice because there's no judgment below that. Under Rule 4A, Federal Rule of Appellate Procedure, it's a valid notice, but it doesn't take effect until the judgment is entered. Until there's a final judgment. And so they can serve all the notices they want, but it doesn't move this case forward until a final judgment is entered. Thank you, Mr. Day. Did I address your questions? No. I think you've addressed them. Thank you, Mr. Day. Thank you. Ms. Ben-Amy, you have more than three minutes. I'd like you to correct what the court needs to do with the qualities so that the court does understand them. The reality is what Amgen has suggested is that you dismiss this case or you affirm it or do whatever because Roche can't sell either way because they've been told by Judge Young that he's going to permanently enjoin it. Then you just can't do that. You can't give drugs to patients knowing they're going to have to come off possibly. There's a fairness issue to patients. And then Amgen will file some more post-judgment motions, and then we may be waiting another year or two. Are you already selling the drug here in the States? No, we were enjoined before FDA approval, so we can't sell. The only drug that's in the United States is the one that's under the safe harbor provisions for the FDA approval. There are clinicals that are still going on in the United States. But there's no commercialization of the drug. Not in the United States. There is in Europe. It's being sold in Europe. Let's assume we were to decide just hypothetically all of the issues on appeal that you have raised that you would like us to decide. Let's assume we decide them today. And let's even assume we decide some of them in your favor and some of them against you. And then we send the whole thing back on remand to the trial judge. The trial judge then now has yet a new case to deal with. He deals with that case. He writes another 160 pages a year from now. He may not even issue a permanent injunction at that point for all we know. We then get all of his new issues raised, and what have we achieved by doing all of that? The posture of this case, trying it before we're FDA approved, waiting a year to make a final decision, including summary judgments, going through this entire process has resulted in this drug being offered. I understand your point. I'm making the point that for us to now piecemeal, to pick apart and piecemeal some of the issues you'd like us to decide and then send it back to the trial judge, I want you to explain to me how that's going to expedite anything, because it might take us another six months to deal with your issues. And I agree with Your Honor with the proposition in your question, which is why we have to consolidate. Well, and you really can't. But I understand. I understand that. So given the reality of the case, what makes sense is what we're trying to figure out. We want to be helpful. We understand you have a marvelous drug that you want to get onto the market. We understand they don't think that's such a great idea. The trial judge has gone both ways on that issue. We want to be helpful. We don't want people dying for absence of a drug that would otherwise be their entitlement. But I'm not sure your solution is going to help us any if we have to do this case piecemeal. And what I suggested, I thought I suggested, if I didn't, I'll suggest it now, is that whatever the court decides, affirm the preliminary injunction, don't affirm the preliminary injunction, whatever the court decides, because that will not end this case completely. Exactly. Send it back down to Judge Young and order him to enter a final judgment, since he's written everything, and immediately. I don't think we need to order him. I think he's waiting by the phone. So you know Judge Young well. I do know him. Bill and I have been friends for many years. And I understand that. This is one of his most amazing pieces of work. Procedurally as well as substantively. But if I could just, there's one other little piece to this, is that if Amgen files these extra motions, that the judge be required to decide them in a certain period of time, because we will not get back to you. They have their rights. You have yours. Thank you, Mr. Penalty. Okay. Thank you very much. All rise.